UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FRANKLIN E. DAVIS,

        Plaintiff,

    v.

PHILLIPS 66,

        Defendant.

Case No. 17-cv-00128-JST

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT**

Re: ECF No. 31

Before the Court is Defendant Phillips 66 Company's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment. The Court will grant the motion in part and deny it in part.

## I.    BACKGROUND

Plaintiff Franklin Davis began working for Defendant Phillips 66 Company ("Phillips") in September 2011 as an operator in its Rodeo refinery. ECF No. 31-2 at 5. As an operator, his duties included working on the fire brigade. ECF No. 31 at 9. Most operators are required to serve on the fire brigade except in limited circumstances, for example, due to seniority, accommodation of disability, or because the individual is working on a unit that is staffed by one person at a time. ECF 31-2 at 75, 84. Operators at the Marine Terminal, where Davis was working in the first half of 2016, have fire brigade duties. Id. Absent responding to an emergency, fire brigade duty mostly involves participating in periodic training exercises. Id. Fire brigade duty is performed by more junior employees –an operator will typically be allowed to cease fire brigade duty after five to seven years of employment. Id. at 75.

Davis had his knees replaced in 2012 and 2013. Id. at 5. After each knee replacement, and again in 2015, Davis took an agility test to determine whether he could perform the functions of

the fire brigade.  Id. at 7-8.  He passed the test each time.  Id.

Davis testified that he asked to be removed from fire brigade in 2013, 2014, and 2015 because his "knees didn't work properly" and he didn't want to "take a chance."  Id. at 8.  Davis said his request was denied because he "did not have the seniority to get out of [his] unit," and participation in the fire brigade was a condition of his employment.  Id. at 8.

In April 2016, Davis asked Tim Stubenvoll, a Human Resource Manager, to complete fire school at the Rodeo refinery, as opposed to the Texas fire school, because the Texas fire school was more physically demanding.  Id.  According to Davis, Stubenvoll told him that he had to go to Texas because he had not completed five years' employment.  Id.  Davis again asked to be taken off fire brigade because he did not want to be responsible for injuring others.  Id.  Stubenvoll asked Davis to fill out a request for accommodation.  Id.  Davis filled out a request, in which he asked either to complete fire brigade training at the Rodeo refinery or to be removed from fire brigade duty entirely.  Id. at 10.

After Davis submitted his request for accommodation, Phillips asked Davis to provide medical documentation of his disability.  Id.  On June 3, 2016, Davis submitted restrictions from his doctor.  Id. at 9-11.  The restrictions included no kneeling for greater than one minute at a time; no stair or ladder climbing for more than 20 minutes per day; and walking greater than ten minutes with heavy gear.  Id. at 79.  Davis had asked for the restrictions he thought would keep him from fire brigade duty, but "the doctor worded them differently."  Id. at 11.  Phillips deemed the restrictions to be so severe as to prevent Davis from performing any of his customary job duties.  Id. at 11, 70.

As a result, Davis was put on short term disability until there was potentially a change in his condition that would allow him to perform normal operator duties.  Id.  Mr. Davis was told that there was no position he could work in with such extreme restrictions, that the Company could not accommodate these restrictions, and that he was being put on short term disability until there potentially a change in his condition that would allow him to do his normal operator duties.  Id. at 11, 73.

At this point, the parties' stories diverge.  Davis testified that he was put on short-term

leave as "punishment," that he immediately had his doctor modify the restrictions so that he could return to work as an operator, and that he passed a company physical, but Phillips still refused to allow him to return to work.  Id. at 11.  Phillips witnesses testified that Davis was placed on leave only because of an inability to accommodate the restrictions requested by his doctor, and that when he returned one month later with reduced restrictions, he was allowed to return to work at that time.  In any event, the parties agree that Davis' doctor reduced his restrictions, which now were "Avoid wearing full bunker gear for periods of more than 2 hrs/d."  ECF No. 31 at 10, 103.  This restriction allowed Davis to work as an operator, but not to participate in the fire brigade.  Id. at 10.

Davis underwent a return to work exam and was cleared to return to work with a few additional restrictions.  Id. at 10-11, 105.  "Based upon these restrictions and because the Company had an open Operator position at Unit 40, which did not involve fire brigade duties," Davis was transferred to Unit 40.  Id. at 11.  Operators in Unit 40 do not have fire brigade duties.  Id.  Davis would have been transferred to Unit 40 anyway as a matter of seniority, but Phillips accelerated the transfer to accommodate his restrictions.  Id. at 77.  In July 2016, Davis passed an agility exam showing that he was capable of performing Unit 40's job functions.  ECF No. 31-2 at 12.

On August 24, 2016, Davis reported that he injured his knee at work.  ECF No. 31-2 at 12.  Davis claims that he slipped off an uneven surface and put his weight on his left hand and fell to the right, and felt a severe pain in his right knee.  Id. at 13.  Davis was alone at the time of the incident.  Id.  Afterwards, he reported the incident to a temporary supervisor.  Id.  He was sent to "CareOnSite" in Martinez, Phillips' medical care provider.  Id.  The doctor released him to work with no limitations.  Id.  Davis returned to work the next day, where he stayed inside and studied, as part of his ongoing training at Unit 40.  Id. at 13-14.  After work, Davis went to see a Kaiser professional, nurse practicner Kimmie Wong.  Id. at 15.  Nurse Wong ordered Davis "off work" from August 26, 2016 through September 1, 2016 and gave him modified restrictions at work through September 8, 2016.  Id. at 16.

During the week of August 26, 2016, Davis states that "hung around" with his wife,

including going to the movies and sitting in a golf cart while his wife played golf.  Id. at 17.

Phillips was unconvinced that Davis was really injured and hired Pinkerton detectives to follow

him around.  Id. at 141-151.  Davis was seen "out and about during the period of his absence from

work, walking, eating out, riding around in a golf cart at a golf course, shopping for groceries and

putting them in the trunk of his Corvette, shifting his weight freely on and off both knees, crossing

his legs and engaging in a good deal of bending of his knee."  ECF No. 31 at 13.  Phillips also

claims that Davis cancelled an August 31, 2016 medical appointment with CareOnSite, Phillips'

medical provider, claiming he was ill.  Id.  Phillips tried to contact Davis three times and left three

voicemails, but Davis was unresponsive.  Id.

During the week of September 1, 2016, Davis returned to work with modified restrictions.

ECF No. 31-2 at 16.  He was given instructions "not to leave the building" and not to "get in a

vehicle without somebody being in it."  Davis also participated in meetings with company officials

about the August 24, 2016 incident and the extent of his injuries.  Id. at 17 – 21.  Phillips claimed

that the purpose of these meetings was to "understand what was preventing Mr. Davis from being

able to work from August 26 to September 1."  ECF No. 31 at 14.  Phillips states that Davis

"refused to provide information concerning the specific limitations that prevented him from

working" and "contended that that was between him and his healthcare provider."  Id. at 15.

After the second meeting, Davis went out on stress leave.  Id. at 23.  Davis provided the

company with a doctor's note that took him off work from September 19, 2016 through October

16, 2016.  ECF No. 31 at 16.  Phillips claimed that Davis golfed regularly during this time and

"reported his scores to the NCGA for handicapping purposes."  Id.  In his deposition, Davis

acknowledged that he golfed during his stress leave, and documents show that he did so several

times.  ECF No. 31-2 at 28.

Phillips concluded that Davis had violated its global ethics policy and basic rules of

conduct "by misrepresenting the circumstance around his absence at the end of August and his

failure to provide an appropriate explanation for that absence."  ECF No. 31 at 17.  Phillips

unsuccessfully tried to reach Davis by telephone to communicate the termination decision on

October 21, 2016.  Id. at 18.  Davis was terminated by a letter dated on October 21, 2016.  Id. at

18; 31-2 at 27.

Davis filed a complaint with the Equal Employment Opportunity Commission (EEOC) and received a right to sue letter on November 16, 2016. ECF No. 1 at 9. On January 11, 2017, Davis filed a complaint in this Court, alleging eight claims pursuant to the Americans with Disabilities Act ("ADA") (disability discrimination and retaliation) and the California Fair Employment & Housing Act ("FEHA") (disability discrimination, failure to reasonably accommodate, failure to engage in interactive process, harassment, retaliation, and failure to prevent discrimination and harassment). See ECF No. 1.

## II.    LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if there is sufficient evidence "such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252.

Where the party moving for summary judgment would bear the burden of proof at trial, that party "has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at trial, that party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party satisfies its initial burden of production, the nonmoving party must produce admissible evidence to show that a genuine issue of material fact exists. Id. at 1102-03. If the nonmoving party fails to make this showing, the moving party is entitled to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must view the evidence in the light most favorable to the

non-moving party and draw all reasonable inferences in its favor.  <u>Anderson</u>, 477 U.S. at 255.

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate

inferences from the facts are jury functions, not those of a judge."  <u>Id.</u>

## III.    ANALYSIS

### A.    Federal and State Disability Discrimination Claims

To establish a prima facie case under FEHA or the ADA, Davis must show that "[he] is a

disabled person within the meaning of the ADA; (2) [he] is a qualified individual, meaning [he]

can perform the essential functions of [his] job; and (3) [Phillips] terminated him because of his

disability."  <u>Nunes v. Wal-Mart Stores, Inc.</u>, 164 F.3d 1243, 1246 (9th Cir. 1999).  <u>See also</u>

<u>Bradley v. Harcourt, Brace & Co.</u>, 104 F.3d 267, 271 (9th Cir. 1996) ("California relies on federal

discrimination decisions to interpret the FEHA. Thus, we proceed with the same analysis for the

purposes of both claims.").

"Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the

employer to offer a legitimate, nondiscriminatory reason for the adverse employment decision."

<u>Haley v. Cohen & Steers Capital Mgmt., Inc.</u>, 871 F. Supp. 2d 944, 953 (N.D. Cal. 2012) (citing

<u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 142 (2000)).  An employer's reasons

need not rest on true information.  <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1063 (9th

Cir. 2002).  Instead, courts require only that the employer "honestly believed its reason for its

actions, even if its reason is foolish or trivial or even baseless."  <u>Id.</u> (citation and quotation

omitted).

If the employer meets this burden, the plaintiff must then raise a triable issue of material

fact as to whether the defendant's proffered reasons for its actions are a mere pretext for unlawful

discrimination.  <u>See</u> <u>Hawn v. Exec. Jet Mgmt., Inc.</u>, 615 F.3d 1151, 1155 (9th Cir. 2010).  A

plaintiff can prove pretext "(1) indirectly, by showing that the employer's proffered explanation is

unworthy of credence because it is internally inconsistent or otherwise not believable, or (2)

directly, by showing that unlawful discrimination more likely motivated the employer."  <u>Raad v.</u>

<u>Fairbanks N. Star Borough Sch. Dist.</u>, 323 F.3d 1185, 1194 (9th Cir. 2003) (internal quotation

marks and citation omitted).  "Circumstantial evidence of pretext must be specific and substantial

in order to survive summary judgment." <u>Bergene v. Salt River Project Agr. Imp. & Power Dist.</u>, 272 F.3d 1136, 1142 (9th Cir. 2001).  Nonetheless, Ninth Circuit law is also clear that the plaintiff's burden at this stage is "minimal."  <u>Nicholson v. Hyannis Air Serv., Inc.</u>, 580 F.3d 1116, 1127 (9th Cir. 2009).  "[V]ery little evidence is necessary to raise a genuine issue of fact regarding an employer's motive; and any indication of discriminatory motive may suffice to raise a question that can only be resolved by a fact-finder."  <u>Id.</u> (quoting <u>McGinest v. GTE Serv. Corp.</u>, 360 F.3d 1103, 1124 (9th Cir.2004).[1]  And, "[i]f a rational trier of fact could, on all the evidence, find that the employer's action was taken for impermissibly discriminatory reasons, summary judgment for the defense is inappropriate."  <u>Wallis v. J.R. Simplot Co.</u>, 26 F.3d 885, 889 (1994).

"Importantly, the 'shift' back to the plaintiff does not place a new burden of production on the plaintiff."  <u>Noyes v. Kelly Servs.</u>, 488 F.3d 1163, 1169–70 (9th Cir. 2007).  "The factfinder may infer 'the ultimate fact of intentional discrimination' without additional proof once the plaintiff has made out her prima facie case if the factfinder rejects the employer's proffered nondiscriminatory reasons as unbelievable."  <u>Id.</u> (citing <u>Raad v. Fairbanks N. Star Borough Sch. Dist.</u>, 323 F.3d 1185, 1194 (9th Cir.2003)).

The parties do not dispute the first two elements of this test, and the Court finds they are established in this record.[2]  First, the Court concludes that Plaintiff has established a prima facie case.  He was disabled within the meaning of the ADA and the FEHA because he had instability in his knees following bilateral knee replacements.  He was a qualified individual who was capable of performing the essential functions of his job.  And he has presented evidence from which – if the jury were to believe his evidence and disbelieve Phillips' evidence – he was terminated because of his disability.  While Phillips claims it terminated Davis because its investigation showed that he was performing tasks that his doctor claimed he could not perform, a jury could

---

[1] Judge Legge's observation that "the standard for demonstrating pretext in order to survive an employer's motion for summary judgment is not perfectly clear in the Ninth Circuit" remains just as true now as when he said it.  <u>Bulos v. Peoplesoft, Inc.</u>, No. C-99-1544-CAL, 2000 WL 868532, at *4 (N.D. Cal. June 21, 2000).

[2] Phillips states in its brief that "Defendant does not concede that Plaintiff can establish the first two elements of a disability discrimination claim under the ADA or FEHA" but acknowledges that its motion is focused only on the third element.  ECF No. 31 at 19 n.6.

conclude that the investigation was consistent with the medical evidence and showed no wrongful conduct by Davis. That would leave Davis' disability as the only basis for his termination.

The Court also finds that Phillips has offered a legitimate, nondiscriminatory reason for its decision to terminate Davis: "Plaintiff's employment was terminated because Plaintiff misrepresented the extent of his injuries and took a leave accommodation to which he was not entitled." ECF No. 31 at 19. In his deposition, Human Resources Manager Tim Stubenvoll stated that Davis was terminated because "he said he couldn't be at work . . . . But, the evidence that we had, including surveillance, showed that he clearly could have been at work doing his sedentary training duties. He also said he complied with what his doctor had told him and the restrictions that he placed on him. And the video surveillance showed that he had not done that."[3] ECF No. 31-2 at 89. Stubenvoll referenced a surveillance report that showed Davis "walking around normally," and "crossing his legs in a golf cart, bending his knee a great deal." Id. At the time, Davis' medical restrictions stated "squat/kneel, knee bending: not at all." ECF No. 33 at 8.

Davis argues that Phillips "did not have a good faith belief in any misrepresentation" because the surveillance report supports Davis, not Phillips. ECF No. 33 at 15. Davis also argues that "the fabricated report of a conversation with Ms. Wong" and the "brutal interrogations" – his words for the two meetings with Phillips managers – demonstrate discriminatory intent.[4] Id. A reasonable juror could find that the surveillance video did not show Phillips misrepresenting the

---

[3] Phillips also argues that Davis misled his healthcare provider by telling Nurse Wong that he needed to climb ladders at work in order to obtain a note taking him off work. Id. Phillips did not learn about this alleged misrepresentation until Nurse Wong's deposition. Id. Thus, this alleged misrepresentation did not impact Phillips' decision to terminate Davis.

[4] Davis also argues that the assignment to Unit 40 demonstrates discriminatory intent, but the Court is unclear how this demonstrates intent given that Davis was assigned to Unit 40 to accommodate his disability. See ECF No. 31-2 at 102. Finally, Davis argues that the "false claim that Mr. Davis was not required to climb ladders and was doing only sedentary work during training evidences discriminatory intent." ECF No. 33 at 15. The Court is also unclear how this demonstrates discriminatory intent because Davis stated in his deposition that 90% of his day was spent doing book and computer work and the other 10 percent was spent riding "around with a guy." ECF No. 37-1 at 5. Davis attempted to avoid the effect of this testimony by submitting a declaration in which he said he was required to climb ladders and stairs as part of training. ECF No. 34 at 3. The Court will disregard this declaration pursuant to the sham affidavit rule. See Nelson v. City of Davis, 571 F.3d 924, 927 (9th Cir. 2009) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony).

extent of his injuries and that Davis' belief is "unworthy of credence". <u>See</u> <u>Chuang</u>, 225 F.3d at 1127. The surveillance report shows Davis engaging in some knee bending, but a jury could conclude that he was following the advice of his caregiver. <u>See</u> ECF No. 31-2 141-171. Nurse Wong's deposition testimony stated that she usually puts down "no kneeling, swatting, bending, and it *gradually increases* as they get better" and that at the time, Davis should not have been bending his knee "beyond what he cannot do." <u>See</u> ECF No. 31-2 at 123 (emphasis added). Nurse Wong was also asked what she tells similar patients about activity. She stated: "So they can—stationary bike to be in shape, motion, gentle range of motion to try to—so they don't lose it and not lose all the muscle tone so they can still heal. And it is not broken so they can put weight, but make sure you walk heel, toe, walk so…." [sic] <u>Id.</u> at 125-126. She also said that being a passenger in a car "should be fine." <u>See</u> <u>id.</u> Because Nurse Wong stated that the intention was for Davis to be able to do more and more with his knee, the fact that the surveillance report shows Davis bending his knee does not necessarily mean that he misrepresented his injury.

Based on this evidence, a jury could conclude that the investigation did not actually show any misconduct on Davis' part, making "the employer's proffered nondiscriminatory reasons . . . unbelievable." <u>See</u> <u>Noyes</u>, 488 F.3d at 1170. Therefore, the motion for summary judgment of the federal and state disability discrimination claims is denied. <u>See also</u> <u>Chuang</u>, 225 F.3d at 1127 ("As the Supreme Court recently reaffirmed, a disparate treatment plaintiff can survive summary judgment without producing any evidence of discrimination beyond that constituting his prima facie case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons.").

### B. State Law Failure to Accommodate Claim

"The elements of a failure to accommodate claim are: '(1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the plaintiff's disability.'" <u>Nigro v. Sears, Roebuck & Co.</u>, 784 F.3d 495, 498 (9th Cir. 2015) (quoting <u>Scotch v. Art Inst. of California–Orange Cnty., Inc.</u>, 173 Cal.App.4th 986, 93 Cal.Rptr.3d 338, 358 (2009)).

Davis' complaint is not clear regarding which reasonable accommodation(s) he is

challenging. ECF No. 1 at 3. However, in his opposition to the motion for summary judgment, Davis states that Phillips accommodated his disability from January 2016 to July 2016 by not assigning him to work in Unit 40, and that Phillips stopped accommodating him in July 2016 when it transferred him to that unit. ECF No. 33 at 15. Davis argues that Phillips assigned him "to Unit 40 despite its knowledge that [he] would not be able to perform the requisite job duties because they involved more climbing ladders and stairs than his position at Marine Terminal." Id. at 17. Although Davis provides no citation to support this argument, the Court infers that Davis is referring to the January 2016 conversation Davis describes in his declaration accompanying the opposition to the motion for summary judgment. ECF No. 34.[5] Davis describes a conversation with Lee Whitney, the Superintendent of Production-Bulk Operations at Phillips 66, about whether he would have problems going from the marine terminal to cross train at Unit 40. Id. at 2. Davis stated that he told Lee that he was aware of the work load and responsibilities at Unit 40 and that he "would have problems going over there." Id. Specifically, Davis explained that he did not have problems doing his work at the Marine Terminal but that he would have trouble climbing the tanks required in Unit 40. Id. Davis also explained that when he completed his return to work agility test, he was told that the only reason he was released was because he was returning to Marine Terminal and if he "was going to return to the Coker or a high stress job [the Phillips medical professional who examined Davis] would not have released me." Id. According to Davis, Lee acknowledged that there were additional tanks and a bigger work load in Unit 40 and assured him that he was not going to be sent to Unit 40. Id.

Even assuming this January 2016 conversation took place, it was superseded by a later conversation in which Davis asked to either attend fire school at Rodeo or be taken off fire brigade, as an accommodation for his knee injuries, "somewhere in April 2016." ECF No. 31-2 at 8. Phillips accommodated this request by transferring him to Unit 40, which did not require fire

---

[5] The Court notes Defendants' objections to this declaration. ECF No. 37 at 20. The foundation objection to Paragraph 3 is overruled, and the hearsay objection as to statements made by Lee Whitney are overruled because Whitney's statements qualify as party admissions. The hearsay objection as to the statements allegedly made by healthcare provider D'Arcy are sustained. In all other respects, Defendants' objections are overruled

brigade duties.  Id.  Davis underwent an agility exam to demonstrate that he was capable of performing the job functions of Unit 40, which he passed.  ECF No. 31-2 at 12.  He began work in Unit 40 in July 2016.  Id.

Davis now complains that he was unhappy about his transfer to Unit 40 because "we went through that whole thing in January how it would affect my knees, and that it would be a lot of stress, and I didn't know if I could do it."  ECF No. 37-1 at 5.  Yet the fact remains that Unit 40 accommodated Davis' request not to work on the fire brigade, that a Unit 40 placement was consistent with the available medical documentation, and that Davis passed an examination designed specifically to test whether he could perform the duties required by Unit 40.  In other words, there is no admissible evidence that Unit 40 was not an appropriate placement.  Therefore, the motion for summary judgment is granted as to the failure to reasonably accommodate claim under California Government Code Section 12940(m).

### C.    State Law Failure to Engage in the Interactive Process Claim

Under California Government Code Section 12940(n), it is unlawful for "an employer or other entity covered by this part to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, *in response to a request for reasonable accommodation* by an employee or applicant with a known physical or mental disability or known medical condition."  (emphasis added).

Davis alleges that Phillips "failed to engage in a timely, good faith interactive process with Plaintiff, thereby exacerbating his disabilities."  ECF No. 1 at 4.  Philips argues that it provided Davis with a reasonable accommodation when "it transferred him to a position that would not require him to serve on the fire brigade."  ECF No. 31 at 23.  In response, Davis argues that "the reasonable accommodation was not reasonable (sic)."  ECF No. 33 at 18.  Davis provides no additional details about why the accommodation was not reasonable, but the Court infers that Davis is referring to his earlier argument that "Defendant assigned Mr. Davis to Unit 40 despite its knowledge that Mr. Davis would not be able to perform the requisite job duties because they involved more climbing ladders and stairs than his position at Marine Terminal."  ECF No. 33 at 17.  As discussed above, Davis has not provided the Court with any evidence that he requested any

11

reasonable accommodation beyond his removal from the fire brigade. He also has provided no evidence that the placement was medically inappropriate. Rather, the evidence shows that Phillips provided exactly the accommodation Davis requested. On these facts, Phillips is not liable for failure to engage in a timely, good faith, interactive process. As the California Court of Appeal noted in the failure to accommodate context, "the employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it." Avila v. Cont'l Airlines, Inc., 165 Cal. App. 4th 1237, 1252–53, 82 Cal. Rptr. 3d 440, 453 (2008) (internal quotation and citations omitted). The motion for summary judgment is granted as to Davis' claim for failure to engage in an interactive process.

### D.      Unlawful Harassment Claim

Under FEHA, it is unlawful for an employer to harass an employee because of physical disability, mental disability, medical condition or age. Cal. Gov. Code §12940(j). "In the FEHA, the terms 'discriminate' and 'harass' appear in separate provisions and define distinct wrongs," although they are sometimes interrelated or overlapping. Roby v. McKesson Corp., 47 Cal. 4th 686, 705-707 (2009), as modified (Feb. 10, 2010). "Harassment is generally concerned with the message conveyed to an employee, and therefore with the social environment of the workplace, whereas discrimination is concerned with explicit changes in the terms or conditions of employment." Id. at 708.

To be actionable, "harassment must be 'sufficiently severe or pervasive' to alter the conditions of the victim's employment and create an abusive working environment." Etter v. Veriflo Corp., 67 Cal. App. 4th 457, 463, (1998), as modified on denial of reh'g (Nov. 16, 1998) (internal citations omitted). "Commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning of harassment . . . . These actions may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by the FEHA are those for discrimination, not harassment." Reno v.Baird, 18

Cal. 4th 640, 646–47 (1998). However, "some official employment actions done in furtherance of a supervisor's managerial role can also have a secondary effect of communicating a hostile message. This occurs when the actions establish a widespread pattern of bias." Roby, 47 Cal. 4th at 709.

Davis alleges that "Defendant harassed him by assigning him to a job that would exacerbate his disability, by constantly calling him into his manager's office and subjecting him to interrogation about his health condition, and by threatening to terminate him on numerous occasions" after he requested a reasonable accommodation. ECF No. 1 at 2. In his opposition to summary judgment, Davis argues that he was intimidated during a meeting with upper management after he injured his right knee at work on August 24, 2016 and that the "two interrogations on September 2 and 16, 2016 were intensely harassing." ECF No. 33 at 19-20. He also claims that some of the company's alleged decisions are evidence of harassment. Id. He claims that the company refused to allow him to return to work after he requested a reasonable accommodation and brought in medical documentation with restrictions, refused to offer him sedentary work while he was off for the month, refused to allow him to work Marine Terminal normal hours, and refused to allow him to work overtime at the Marine Terminal. Id. Davis argues that the harassment was so severe it caused him to take medical leave. ECF No. 33 at 20.

Davis offers no evidence that his assignment to Unit 40 was harassment, rather than a response to a request for a reasonable accommodation. Phillips' decisions about where and when Davis could work, especially given the ongoing conversation about Davis' medical conditions and the appropriate placement for him, are "commonly necessary personnel decisions." See Reno, 18 Cal. 4th at 646–47. Phillips has not offered sufficient evidence of a widespread pattern of bias as to constitute harassment. See Roby, 47 Cal. 4th at 709.

However, Davis does offer evidence of harassment at one of the meetings, through the testimony of Teresa Serrano, a health and safety represenstative.[6] Phillips argues that the

_____

[6] In her disposition, Serrano stated that the meeting turned "hostile" and that Davis was providing the company with everything they had asked for but company officials continued to ask him the same questions. ECF No. 35 at 48.

company "was undertaking an investigation" because it appeared that Davis was misrepresenting

his injury.  ECF No. 31 at 25.  Even if this meeting constituted harassment, this single incident is

insufficient to support a harassment claim under California Government Code Section 12940(j).

Therefore, the motion for summary judgment as to Davis' harassment claim is granted.  See

Hardin v. Wal-Mart Stores, Inc., 604 F. App'x, 545, 548 (9th Cir. 2015), cert. denied, 136 S. Ct.

331 (2015) (finding that four incidents scattered over eight years, including several threats to fire

plaintiff, "did not form a pattern of behavior that was sufficiently severe to constitute an FEHA

violation" (citation omitted)).

### E.     Federal and State Retaliation Claims

"To establish a prima facie case of retaliation under the FEHA, a plaintiff must show

'(1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an

adverse employment action, and (3) a causal link existed between the protected activity and the

employer's action.'"  Scotch v. Art Inst. of California-Orange Cty., Inc., 173 Cal. App. 4th 986,

1020 (2009) (quoting Yanowitz v. L'Oreal USA, Inc. 36 Cal.4th 1028 (2005)).

Once the employee establishes a prima facie case under a retaliation theory, the burden

shifts to the employer to "rebut the presumption by producing evidence that it had a legitimate,

nondiscriminatory reasons for its adverse employment action."  Santillan v. USA Waste of

California, Inc., 853 F.3d 1035, 1042 (9th Cir. 2017).  If the employer satisfies this burden, the

employee must show that the reason "constitutes mere pretext" or "must produce other evidence of

intentional discrimination."  Id.  The analysis for a retaliation claim under the ADA is the same.

See Pardi v.Kaiser Foundation Hospitals, 389 F.3d 840, 849 (9th Cir. 2004).

Phillips argues that Davis has not established a prima facie case of retaliation because he

cannot prove a causal link between a protected activity and his termination.  ECF No. 21 at 26.

Phillips contends that Davis was terminated because "he misrepresented the circumstances around

his absence at the end of August and failed to provide an appropriate explanation for that

absence."  Id.

The Court finds that Davis establishes the prima facie case because he suffered an adverse

employment action – termination – about four months after he requested a reasonable

14

accommodation.  ECF No. 31-2 at 27.  See Thomas v. City of Beaverton, 379 F.3d 802, 812 (9th Cir. 2004) ("The causal link between a protected activity and the alleged retaliatory action can be inferred from timing alone when there is a close proximity between the two.") (internal citation omitted); see also Flait v. N. Am. Watch Corp., 3 Cal. App. 4th 467, 478, (1992), reh'g denied and opinion modified (Mar. 5, 1992) (finding a causal link when employee "was terminated only a few months" after he engaged in protected activity).[7]

Since Davis has established a prima facie case, the burden shifts to Phillips to articulate a "legitimate, nondiscriminatory reasons for its adverse employment action." Santillan, 853 F.3d at 1035.  As discussed above, the Court finds that Phillips has articulated a legitimate nondiscriminatory reason for its actions.  See ECF No. 31 at 22.  And, as discussed above, the Court also finds that there is a genuine issue of material fact regarding whether Davis was misrepresenting his injuries to the company.  Although Davis did not cite this argument in his briefing, he has produced some – perhaps just enough – evidence that the legitimate reason offered by Phillips is mere pretext.  Therefore, the motion for summary judgment as to the federal and state retaliation claims is denied.

### F.      Failure to Prevent Discrimination, Harassment, or Retaliation Claim

It is unlawful under FEHA for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."  Cal. Govt. Code. § 12940(k).  A plaintiff seeking to recover damages based on this claim must show that "(1) plaintiff was subjected to discrimination, harassment, or retaliation; (2) defendant failed to take all reasonable steps to prevent discrimination, harassment or retaliation; and (3) this failure caused plaintiff to suffer

---

[7] There is an additional potential problem with Plaintiff's state law retaliation claim pursuant to Cal. Gov. Code §12940(h):  "Under FEHA, requesting accommodations is not 'protected activity' unless the plaintiff first makes a complaint regarding the denial of accommodations." Violan v. On Lok Senior Health Servs., No. 12-CV-05739-WHO, 2013 WL 6907153, at *11 (N.D. Cal. Dec. 31, 2013).  Because Defendant does not address this infirmity, and because subsection (m)(2) of section 12940 provides a claim for retaliation based on a request to accommodate, the Court does not address the issue further.  Under the ADA, requesting an accommodation is a protected activity.  Coons v. Sec'y of U.S. Dep't of Treasury, 383 F.3d 879, 887 (9th Cir. 2004) ("Coons was engaged in a protected activity when he requested that the IRS make reasonable accommodations for his alleged disability."); Valenzuela v. Bill Alexander Ford Lincoln Mercury Inc., No. CV-15-00665-PHX-DLR, 2017 WL 1326130, at *4 (D. Ariz. Apr. 11, 2017) ("requesting a reasonable accommodation is protected activity").

injury, damage, loss or harm." Leland v. City & Cty. of San Francisco, 576 F. Supp. 2d 1079, 1103 (N.D. Cal. 2008). If plaintiff has established sufficient evidence to overcome summary judgment with respect to a disparate treatment or retaliation claim under FEHA, defendant is not entitled to summary judgment on a failure to prevent discrimination claim. Id.; see also Reed v. First Student, Inc., No. CV 16-5483-RSWL-FFMX, 2017 WL 4325580, at *6 (C.D. Cal. Sept. 27, 2017) ("This claim essentially derives from a FEHA discrimination claim. Because Plaintiff's FEHA cause of action survives summary judgment, the Court denies Defendant's Motion as to Plaintiff's failure to prevent discrimination cause of action as well.") (internal citations omitted).

Davis' FEHA discrimination and retaliation claims survive summary judgment. Thus, the Court denies the motion for summary judgment as to the failure to prevent discrimination claim.

## CONCLUSION

The Court grants Defendants' motion for summary judgment as to Davis' FEHA failure to accommodate and failure to engage in interactive process claims. The Court denies the motion as to Davis' FEHA and ADA discrimination claims, federal and state retaliation claims and failure to prevent claim.

**IT IS SO ORDERED.**

Dated: December 22, 2017

_____
JON S. TIGAR
United States District Judge